UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

NICHOLAS J. SPITTLER,

                              Plaintiff,                         **REPORT
                                                                    and
                                                              RECOMMENDATION**

          v.
                                                               **14-CV-00279V(F)**

CAROLYN W. COLVIN, [1] Commissioner of
 Social Security,

                              Defendant.

─────────────────────────────────

APPEARANCES:        LAW OFFICES OF WILLIAM C. BERNHARDI
                    Attorneys for Plaintiff
                    STEPHEN EDWARD BROOKS, of Counsel
                    950-A Union Road
                    Suite 240
                    West Seneca, New York 14224

                    WILLIAM J. HOCHUL, JR.
                    UNITED STATES ATTORNEY
                    Attorney for Defendant
                    MONIKA K. CRAWFORD
                    Special Assistant United States Attorney, of Counsel
                    United States Social Security Administration
                    Office of the General Counsel, of Counsel
                    26 Federal Plaza
                    Room 3904
                    New York, New York 10278


<u>**JURISDICTION**</u>

        This action was referred to the undersigned by Honorable Richard J. Arcara on

September 16, 2014.[1] (Doc. No. 12).  The matter is presently before the court on

motions for judgment on the pleadings, filed on September 15, 2014, by Plaintiff (Doc.

No. 11), and on December 15, 2013, by Defendant (Doc. No. 15).

───────────────────────

[1] Hon. Richard J. Arcara reassigned the case to Hon. Lawrence J. Vilardo on November 24, 2015.

**BACKGROUND**

Plaintiff Nicholas J. Spittler ("Plaintiff" or "Spittler"), seeks review of Defendant's decision denying him Disability Insurance Benefits ("DIB") ("disability benefits") under, Title II and Title XVI of the Social Security Act ("the Act").  In denying Plaintiff's application for disability benefits, Defendant determined that Plaintiff had severe impairments of arthritis of the spine (R. 24), but does not have an impairment or combination of impairments within the Act's definition of impairment.  (R. 15).[2] Defendant further determined that Plaintiff had the residual functional capacity to perform light work with the ability to perform more than occasional bending, and the limitation of a sit-stand option every thirty minutes.  (R. 15).  As such, Plaintiff was found not disabled, as defined in the Act, at any time from the alleged onset date through the date of the Administrative Law Judge's decision on September 12, 2102.  (R. 22-28).

**PROCEDURAL HISTORY**

Plaintiff filed his application for disability benefits on December 14, 2010 (R. 224), alleging disability based on arthritis of the spine, back injuries, and osteoarthritis.  (R. 228).  Plaintiff's application was initially denied by Defendant, and pursuant to Plaintiff's request filed on  April 26, 2011 (R. 84-85), a hearing was held before Administrative Law Judge Alan B. Berkowitz ("Berkowitz" or "the ALJ"), on June 21, 2012, in Buffalo, New York, and via videoconference in Brooklyn, New York pursuant to 20 C.F.R. §

---

[2] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

404.936(c).  (R. 35-71).  Plaintiff, represented by Stephen Brooks, Esq. ("Brooks"),

appeared and testified at the hearing.  (R. 35-59 ).  Vocational Expert Andrew Vaughn

("Vaughn" or "the VE"), also testified at the hearing.  (R. 59-71).  The ALJ's decision

denying the claim was rendered on September 12, 2012.  (R. 22-28).

Plaintiff requested review by the Appeals Council, and the ALJ's decision

became Defendant's final decision when the Appeals Council denied Plaintiff's request

for review on February 19, 2014.  (R. 1-6).

This action followed on April 17, 2014, with Plaintiff alleging that the ALJ erred by

failing to find him disabled.  (Doc. No. 1).

On September 15, 2014, Plaintiff filed a motion for judgment on the pleadings

("Plaintiff's motion"), accompanied by a memorandum of law (Doc. No. 11) ("Plaintiff's

Memorandum").  On December 15, 2014, Defendant filed Defendant's motion for

judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of

law (Doc. No. 15) ("Defendant's Memorandum").  On January 5, 2015, Plaintiff filed

Plaintiff's Reply Memorandum of Law (Doc. No. 16) ("Plaintiff's Reply").  Oral argument

was deemed unnecessary.  Based on the following, Plaintiff's motion for remand should

be GRANTED.

### FACTS[2]

Plaintiff, Nicholas J. Spittler, ("Spittler" or "Plaintiff"), was born on August 8, 1969,

is married, lives with his two school-aged children, and worked most recently as a

maintenance worker and parking lot attendant until October 30, 2010 (R. 38-39, 197),

when Plaintiff did not return to his job from seasonal lay-off as a result of Plaintiff's

---

[2] Taken from the pleadings and the administrative record.

impairments.  (R. 39).  Plaintiff alleges that he is not able to work because he suffers degenerative disc disease, arthritis of the spine, congenital clubbing of the hands and feet, lower extremity radiculopathy, chronic joint pain, and obesity.  (R. 40).

Relative to the period of disability under review in this case, on November 29, 2010, Plaintiff underwent an X-ray of Plaintiff's lumbar spine at Bertrand Chaffee Hospital in Springville, New York, where Anne D. Ehrlich, M.D. ("Dr. Ehrlich"), evaluated Plaintiff with a massive anterior body spur at Plaintiff's L5[3] disc segment, and mild anterior spurring at Plaintiff's L4 disc segment.  (R. 280).  An X-ray of Plaintiff's thoracic spine taken the same day showed a trace of convex curvature at Plaintiff's T-8[4] disc segment, and moderate spurring at the lower segment of Plaintiff's spine.  (R. 279).

On December 14, 2010, John Halpenny, M.D. ("Dr. Halpenny"), an orthopedic surgeon with Varus Orthopedics in Hornell, New York, reviewed Plaintiff's November 29, 2010 X-ray results, and opined that Plaintiff had degenerative changes in the thoracic spine at the T7-T12 disc segments, with slight kyphotic (spine curvature) deformity, fairly good range of motion ("ROM") of Plaintiff's cervical spine, a large anterior osteophyte (bone spur) at Plaintiff's L5 disc segment, diagnosed Plaintiff with thoracic and lumbar strain, and referred Plaintiff to physical therapy.  (R. 299).

On January 4, 2011, Plaintiff underwent a lumbar spine X-ray, where Michael James Rudzinski ("Dr. Rudzinski"), evaluated Plaintiff with mild spondylosis, a

---

[3] The lumbar spine is located in the area of an individual's lower back, and is comprised of five disc segments numbered L1 through L5, the sacrum bone, and coccyz (tailbone).
[4] The thoracic vertebrae are located in the area of an individual's upper and middle back, and are comprised of twelve disc segments numbered T1 through T12.

prominent anterior osteophyte at Plaintiff's L5 disc segment, and no evidence of degenerative disc disease.  (R. 371).

On January 16, 2011, Plaintiff completed a pain assessment for physical therapy purposes, where Plaintiff noted that his back pain was severe and intermittent, reduced Plaintiff's ability to sleep by 50 percent, and resulted in Plaintiff being unable to sit for longer than 10 minutes, walk greater than one quarter of a mile without increased pain, and required Plaintiff to alter his methods of washing and dressing, traveling, and social activities as a result of gradually worsening pain.  (R. 293).  On a visual analog pain scale,[5] Plaintiff rated his thoracic and lumbar pain as 6 to7 out of 10 on a ten-point scale.  *Id.*

On January 23, 2011, Dr. Halpenny completed a report at the request of the New York State Office of Temporary and Disability Assistance, and noted that Plaintiff had a chronic lumbar strain for three to four years' time, and that Plaintiff's lumbar ROM measured 50 degrees upon flexion and 10 degrees upon extension, with lateral bending measured at 10 degrees with discomfort, that Plaintiff exhibited tenderness at Plaintiff's L3-S1 disc segment, that Plaintiff's straight leg raising test [6] ("SLR"), measured 60 degrees bilaterally with back pain, that Plaintiff's diagnosis included chronic lumbar strain with early disc disease and facet joint syndrome, and that Plaintiff was disabled enough that he was not able to return to work that winter as a parking lot attendant.  (R. 341-42).

---

[5] A visual analog pain scale is a psychometric response scale used to rate an individual's pain.
[6] Straight leg raise tests are used to determine whether an individual has a ruptured disc. The test is positive when raising of a leg between 30 to 70 degrees causes pain to occur that radiates down the leg to below the knee. *See* 4A-32 Lawyers' Medical Cyclopedia, Injuries to the Head, Spinal Cord, and Peripheral Nerves, Part IV, § 32.107, Intervertebral Disc Protrusions, Lumbar Disc Syndrome, Matthew Bender & Company, Inc. 2015.

On January 27, 2011, Plaintiff attended an outpatient physical therapy evaluation at Western New York Physical and Occupational Therapy Group in Ellicottville, New York, where Physical Therapist Christopher Johnston ("Physical Therapist Johnston"), evaluated Plaintiff's trunk with ROM measured at 50 degrees, forward bending measured at 20 degrees, and backward bending measured at 35 degrees.  (R. 265). Plaintiff's left and right hip ROM measured 25 degrees upon internal rotation, with left hip external ROM measured at 25 degrees, and right hip external ROM measured at 20 degrees.  *Id.*  Plaintiff's SLR test measured 60 degrees on the left side and 55 degrees on Plaintiff's right side.  Physical Therapist Johnston set Plaintiff's treatment goal as regaining the ability to sit or stand for more than one-half hour without increased pain. (R. 266).

On February 8, 2011, Plaintiff visited William J. Wnuk, M.D. ("Dr. Wnuk"), for an annual physical examination, where Dr. Wnuk noted that Plaintiff reported that he was released from physical therapy treatment as a result of missing appointments for no insurance.  (R. 276).  Dr. Wnuk noted that Plaintiff used a cane to assist Plaintiff's ambulation, and that Plaintiff exhibited lumbosacral tenderness upon examination.  (R. 276).

On February 11, 2011, Dr. Halpenny completed a physical examination of Plaintiff who reported using anti-inflammatory medicine for pain and a cane.  (R. 272). Dr. Halpenny assessed Plaintiff with 60 degree forward flexion of Plaintiff's lumbar spine, with extension measured at 10 degrees, lateral bending measured at 15 degrees, and a positive SLR test measured at 80 Degrees.  Plaintiff reported that he was

attempting to arrange for physical therapy treatment, but was unable to afford the cost of driving to the appointments.  (R. 272).

On April 12, 2011, Plaintiff visited Dr. Halpenny with symptoms of lumbar pain, where Dr. Halpenny noted that Plaintiff was using a cane and wearing a back brace to alleviate Plaintiff's back symptoms.  (R. 271).  Dr. Halpenny opined that Plaintiff continued to be disabled, assessed Plaintiff with chronic lumbar strain syndrome, and noted that Plaintiff was unable to attend physical therapy because of cost.  *Id.*

During a visit to Dr. Halpenny on May 24, 2011, Plaintiff reported wearing a back brace and using a cane, and reported the ability to walk a distance of 100 feet without pain, was able to do light housework and yard chores, and lift 20 pounds occasionally. (R. 270).  Dr. Halpenny assessed Plaintiff's lumbar spine with 40 degrees upon forward flexion, with extension measured at 10 degrees, Plaintiff's lateral bending measured 10 degrees with discomfort, with Plaintiff's SLR test measured at 60 degrees bilaterally. Plaintiff's hip strength measured at 4 out of 5 on a five-point scale, with plantar and ankle dorsiflexion measured at 5 out of 5, and patellar tendon strength measured at 2 out of 3 on a three-point scale.  Dr. Halpenny diagnosed Plaintiff with lumbar strain syndrome and chronic cervical strain, and noted that Plaintiff continued to be disabled. *Id.*

On June 14, 2011, Dr. Halpenny completed a Treating Physician's Functional Capacity Assessment for the period between October 31, 2010, and June 14, 2011, and assessed Plaintiff with the ability to occasionally lift 10 pounds, lift 5 pounds frequently, stand or walk less than two hours per day, sit up to 6 hours per day, but not longer than

30 minutes at a time, push or pull up to 20 pounds with the upper extremities, and 5 pounds with the lower extremities, and that Plaintiff required a cane to walk. (R. 269).

On August 23, 2011, Plaintiff returned to Dr. Halpenny, and reported increased back pain and neck stiffness. (R. 392). Upon examination, Dr. Halpenny assessed Plaintiff with good range of motion of Plaintiff's cervical spine and the ability to walk for 100 feet at a time without pain. Plaintiff's SLR test measured 60 to 70 degrees bilaterally, with forward flexion of Plaintiff's lumbar spine measured at 60 degrees, and 15 to 20 degrees upon extension. Dr. Halpenny diagnosed Plaintiff with cervical strain, and spondylolisthesis with lumbar strain, and noted that Plaintiff had filed a claim for disability. *Id.*

On November 22, 2011, Dr. Halpenny noted that Plaintiff continued to be disabled from his spinal impairment, and that Plaintiff reported lumbar pain that radiated to Plaintiff's right leg, aggravated by lifting and prolonged walking, that Plaintiff reported difficulty sleeping, was able to lift 20 pounds, walk for 15 to 20 minutes at a time, dress himself, and perform light housework. (R. 391). Dr. Halpenny evaluated Plaintiff with forward flexion measured at 40 degrees, and 10 degrees upon extension, with lateral bending measured at 20 degrees. Plaintiff's SLR test measured 50 degrees. (R. 391). Dr. Halpenny reviewed an X-ray of Plaintiff's lumbar spine that revealed some osteophyte formation anteriorly at Plaintiff's L5 and L4 disc segments, with no major spondylolisthesis, diagnosed Plaintiff with chronic lumbar strain, and recommended that Plaintiff undergo a lumbar MRI to assess whether Plaintiff exhibited any right-sided radiculopathy (nerve root compression). (R. 391).

On November 29, 2011, Plaintiff underwent a lumbar MRI scan at Bertrand Chaffee Hospital in Springville, New York, where Richard D. Thomas, M.D. ("Dr. Thomas"), opined that Plaintiff's MRI revealed minor bony hypertrophy (enlargement) and disc bulging at Plaintiff's T12-L1 disc segment, minor bony hypertrophy and disc bulging with no herniation, mild hypertrophy of the flaval (tissue that connects the vertebrae) ligaments bilaterally at Plaintiff's L1-L2 disc segment, minor bony hypertrophy and disc bulging without herniation at Plaintiff's L2-L3 disc segment with moderate hypertrophy of Plaintiff's facet joints and flaval ligaments slightly worse on Plaintiff's left side, and endplate hypertrophy and disc bulging without herniation, shallow herniation into Plaintiff's spinal canal, mild hypertrophy of Plaintiff's facet joints and flaval ligaments at Plaintiff's L3-L4 disc segment, mild circumferential bulging and endplate spurring at Plaintiff's L4-L5 disc segment, and no evidence of disc herniation at Plaintiff's L5-S1 disc segment.  (R. 358).  Dr. Thomas assessed Plaintiff with shallow herniation into the floor of Plaintiff's L3 with no significant stenosis, multilevel evidence of lumbar spondylosis with endplate hypertrophy and disc bulging, lower spondylosis. (R. 358).

During a follow-up examination with Dr. Halpenny on January 3, 2012, Plaintiff reported continued back pain with pain radiating to Plaintiff's right leg aggravated by activity, and stiffness and variable pain that measured from 4 to 7 on a ten-point scale. (R. 389).  Upon examination, Dr. Halpenny evaluated Plaintiff with lumbar forward flexion of 50 degrees, extension of 15 degrees, lateral bending measured at 15 degrees, a right-sided SLR test that measured 60 degrees, left –sided SLR test measured at 70 degrees, good range of motion of both hips, hip strength that measured

4 out of 5 upon flexion, abduction, and adduction, pain upon extension of both knees

that measured 4 out of 5 on a five-point scale, and patellar tendon reflex that measured

2 out of 3 on a three-point scale.  Dr. Halpenny opined that Plaintiff's lumbar spine MRI

administered on November 29, 2011, revealed mild spondylosis at several levels of

Plaintiff's lumbar spine, with mild narrowing of the foramen at Plaintiff's L3 disc

segment, with no other major changes, and diagnosed Plaintiff with chronic lumbar

strain and lumbago with occasional radiculopathy, and advised Plaintiff to continue with

Plaintiff's Lortab medication.  (R. 389).

   On February 23, 2012, Plaintiff visited Dr. Wnuk for his annual physical

examination where Plaintiff reported low back pain and left leg numbness.  (R. 360).  Dr.

Wnuk noted that Plaintiff exhibited peripheral clubbing of the fingers and toes, and

assessed Plaintiff with a body mass index ("BMI")[7] of 34.2.

   On March 16, 2012, John Schwab, D.O. ("Dr. Schwab"), a osteopathic

practitioner with Industrial Medicine Associates, Inc., completed a consultative

orthopedic examination on Plaintiff on behalf of the Social Security Administration, and

noted that Plaintiff reported a history of stress fractures to the right femur that caused

Plaintiff difficulty walking long distances, and pain in Plaintiff's back that measured 10

out of 10 on a ten-point scale.  (R. 346).  Plaintiff reported activities of daily living that

included cooking three times weekly, daily cleaning, shopping once each week, daily

showering and bathing, reading and socializing with friends, and a hobby of wood

carving.  (R. 347).  Dr. Schwab evaluated Plaintiff with intact finger and hand dexterity,

---

[7] BMI measures a person's health and fitness using an individual's height and weight. A BMI below 25 is normal, an individual with a BMI between 25-29 is overweight, an individual with a BMI of 30 or greater is considered obese.  *See* http://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm.

full shoulder range of motion, normal flexion, extension, and rotary movements of

Plaintiff's thoracic and lumbar spines, full range of motion of Plaintiff's hips, knees and

ankles, and diagnosed Plaintiff with osteoarthritis by history of Plaintiff's back and hips,

low back pain, status post fracture of Plaintiff's right femur, and mild restriction to

Plaintiff's ability for bending, lifting, and carrying.  (R. 348).

On May 1, 2012, Plaintiff visited Dr. Halpenny for a follow-up examination, where

Plaintiff reported the ability to walk for 15 to 20 minutes, sit for 30 to 60 minutes, stand

for 15 to 20 minutes, lift up to 20 pounds occasionally and 10 pounds frequently, and

that Plaintiff had attended two sessions of physical therapy.  (R. 388).  Upon

examination, Dr. Halpenny assessed Plaintiff with limited range of motion of the lumbar

spine, good hip range of motion, and intact sensation upon hip flexion.  (R.388).  Dr.

Halpenny reviewed an X-ray[8] of Plaintiff's lumbar spine that showed good alignment

with well-preserved disc space, some anterior osteophyte formation, minor changes to

Plaintiff's thoracic spine, and diagnosed Plaintiff with chronic thoracic and lumbar strain

with left-sided radiculopathy.  Dr. Halpenny opined that Plaintiff was not employable in

Plaintiff's current condition.  *Id.*

On May 18, 2012, Plaintiff visited Veteran's Administration Medical Center

("VAMC"), to establish care, where Physician Assistant Theodore Steinwachs, ("P.A.

Steinwachs"), completed a physical examination of Plaintiff and evaluated Plaintiff with

abnormal tenderness of Plaintiff's lumbar and cervical areas with no deformities,

abnormal distal clubbing of Plaintiff's fingers and toes, normal strength of Plaintiff's

joints, bones, muscles, with tenderness in Plaintiff's spinal region, positive SLR test

---

[8] The record does not indicate the date of the X-ray.

results, and limited ROM.  (R. 382). P.A. Steinwachs counseled Plaintiff on the risks of

smoking, and noted that Plaintiff's back impairment contraindicated Plaintiff's

participation in a weight reduction program, and opined that Plaintiff was permanently

disabled.  (R. 385).  Plaintiff returned to VAMC for a follow-up examination, and

reported not having completed the prescribed blood tests, as Plaintiff could not afford

gas money to travel to the testing center.  (R. 375-79).

On July 3, 2012, Plaintiff visited Dr. Halpenny with complaints of worsening back

pain that measured between 3 and 7 to 8 on a ten-point scale, and reported that

Plaintiff's leg pain was affected by usual activities.  Plaintiff reported increased pain

while walking on cement, with the ability to walk for 100 feet while walking barefoot on

the grass, the ability to sit for 30 minutes, drive for 20 minutes, lift 20 pounds

occasionally and 10 pounds frequently, and increased use of Lortab to reduce Plaintiff's

back pain.  (R. 387).  Dr. Halpenny noted that Plaintiff continued to use a cane for

walking, and assessed Plaintiff's lumbar spine with forward flexion of 40 degrees, with

extension measured at 10 degrees, and lateral bending measured at 10 degrees.  A

SLR test measured positive at 70 degrees bilaterally, with hip weakness upon flexion,

abduction, and adduction, weakness of Plaintiff's knees upon flexion and extension with

strength measured as 4 out of 5 on a five-point scale, and intact sensation.  Dr.

Halpenny noted that Plaintiff's lumbar spine X-ray revealed interior bony spurring at

Plaintiff's L5 disc segment extending proximally and distally, with well-preserved disc

spaces, and diagnosed Plaintiff with chronic lumbar strain.  *Id.*

On February 3, 2012, Dr. Halpenny completed a Treating Physician's Functional

Capacity Assessment on Plaintiff that covered the period between October 2011 and

June 2012, and opined that Plaintiff maintained the ability, during that period, to

occasionally carry 20 pounds, frequently lift 10 pounds, stand and or walk for three

hours per day with the required use of a cane, sit less than 5 hours each day with a

change of position required at least every thirty to forty minutes, the ability to push or

pull 20 pounds with the upper and lower extremities, no need to lie down during an

eight-hour period, and difficulty sleeping.  (R. 407).


### DISCUSSION


### 1.    Disability Determination Under the Social Security Act

An individual is entitled to disability insurance benefits under the Social Security

Act if the individual is unable

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can
> be expected to last for a continuous period of not less than
> 12 months. . ..  An individual shall be determined to be under
> a disability only if his physical or mental impairment or
> impairments are of such severity that he is not only unable to
> do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national
> economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves he or she is severely impaired and unable to perform

any past relevant work, the burden shifts to the Commissioner to prove there is

alternative employment in the national economy suitable to the claimant.  *Parker v.*

*Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

A.      **Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding

disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law

judge's findings are supported by substantial evidence.  *Richardson v. Perales*, 402

U.S. 389, 401 (1971).  Substantial evidence requires enough evidence that a

reasonable person would "accept as adequate to support a conclusion."  *Consolidated*

*Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical

facts, diagnoses or medical opinions based on these facts, subjective evidence of pain

or disability (testified to by the claimant and others), and . . . educational background,

age and work experience."  *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983)

(quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).  If the opinion of the treating

physician is supported by medically acceptable techniques and results from frequent

examinations, and the opinion supports the administrative record, the treating

physician's opinion will be given controlling weight.  *Schisler v. Sullivan*, 3 F.3d 563, 567

(2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is

supported by substantial evidence.  *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and

1383(c)(3).  "Congress has instructed . . . that the factual findings of the Secretary,[1] if

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of
the Secretary of Health and Human Services in Social Security cases was transferred to the
Commissioner of Social Security, effective March 31, 1995.

supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits.  *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Absent an impairment, the applicant is not eligible for disability benefits.  *Id.*  Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[2]  42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920.  *See also Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

---

[2] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e).  If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits.  *Id.*  Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment.  20 C.F.R. §§ 404.1520(f), 416.920(f).  *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work").  If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment.  *Berry,* 675 F2d at 467.  In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision.  *Richardson*, 402 U.S. at 410.

## B.    <u>Substantial Gainful Activity</u>

The first inquiry is whether the applicant engaged in substantial gainful activity.  "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b).  Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed.  20 C.F.R. §

404.1572(a).  Earnings may also determine engagement in substantial gainful activity.
20 C.F.R. § 404.1574.  In the instant case, the ALJ determined that Plaintiff had not
engaged in substantial gainful activity since October 30, 2010, the date of Plaintiff's
alleged onset of disability.  (R. 24).  Plaintiff does not contest this determination.

**C.      Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether Plaintiff
had a severe medically determinable physical or mental impairment that meets the
duration requirement in 20 C.F.R. § 404.1509 and significantly limits the Plaintiff's ability
to do "basic work activities."  The Act defines "basic work activities" as "abilities and
aptitudes necessary to do most jobs," and includes physical functions like walking,
standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for
seeing, hearing, and speaking; understanding, carrying out, and remembering simple
instructions; use of judgment; responding appropriately to supervision, co-workers and
usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§
404.1521(b) ("§ 1521"), 416.921(b).

In this case, the ALJ determined that Plaintiff has the severe impairment of
arthritis of the spine as defined under 20 C.F.R. § 404.1520(c), but includes no
consideration of whether Plaintiff's obesity and congenital clubbing of Plaintiff's hands
and feet are severe or non-severe impairments under step two of the disability analysis.
(R. 24).  Plaintiff contends that the ALJ's determination fails to consider all of Plaintiff's
impairments, singly or in combination, during each step of ALJ's disability evaluation.
Plaintiff's Memorandum at 25.  Defendant maintains that the ALJ was not required to
include consideration of Plaintiff's clubbing and obesity throughout the disability analysis

as Plaintiff's disability application included no allegation that Plaintiff's obesity or hand

and foot clubbing were disabling conditions or limited Plaintiff's ability to work.

Defendant's Memorandum at 16.

Step two of the disability review analysis may do nothing more than screen out

*de minimus* claims, *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), and a finding

of a non-severe impairment should be made only where the medical evidence

establishes only a slight abnormality which would have no more than a minimal effect

on the claimant's ability to work.  *Rosario v. Apfel,* 1999 WL 294727, at *5 (E.D.N.Y.

March 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856).  Step

two severity determinations require that the ALJ complete a careful evaluation of

medical findings, to inform the ALJ's judgment as to each impairment's limiting effects

on the claimant's physical and mental abilities to perform basic work activities, and

medical evidence alone is evaluated to assess the effects of a claimant's impairments

on the claimant's ability to do basic work activities.  *See* S.S.R. 85-28, 1985 WL 56856,

at *4 (1985).  An ALJ's failure to account for a claimant's impairment would normally not

require an order for remand where substantial evidence supports mere presence of the

impairment, and the ALJ otherwise accounts for the impairment within the ALJ's

residual functional capacity assessment of the claimant, s*ee Lowe v. Colvin,* 2016

624922, at *2 (W.D.N.Y. February 17, 2016).  In this case, however, the ALJ fails to

take Plaintiff's obesity and hand and foot clubbing impairments into account during any

stage of the disability review process.

The regulations require ALJ's to consider impairments a claimant states that he

has or those "about which [the ALJ] receive[s] evidence" *see* 20 C.F.R. § § 404.1512(a);

416.912(a), and the record in this case provides ample evidence that supports that

Plaintiff is obese, and has severe clubbing to his hands and feet (R. 381, 384-85, 58,

315, 321, 327, 360-61, 382).

**Obesity**

Plaintiff contends that the ALJ was required to take Plaintiff's obesity into account

in accordance with Social Security Ruling ("SSR") 02-1P that requires the ALJ take a

claimant's obesity into account when determining whether

1. an individual has a medically determinable impairment;
2. an individual's impairment(s) is severe;
3. an individual's impairment(s) meets or equals the requirements of a listed impairment in the listings;
4. an individual's residual functional capacity prevents him or her from doing past relevant work or other work that exists in significant numbers in the national economy.

Social Security Ruling 02-1P, Titles II and XVI: Evaluation of Obesity, 2002 WL 34686281, at *3 (September 12, 2002).

Although Plaintiff properly contends that the ALJ was required to take Plaintiff's

obesity into account, Plaintiff's Memorandum at 25, and evidence on this record is

sufficient to alert the ALJ to the possibility of Plaintiff's obesity (R. 381, 184, 185), no

treating sources indicate that Plaintiff's obesity is a significant factor in relation to

Plaintiff's ability to perform work, and Plaintiff does not specify, even upon questioning

by the ALJ, that Plaintiff's obesity impairs Plaintiff's ability to work.  As such, the ALJ

was not required to specifically discuss Plaintiff's obesity during the ALJ's disability

review analysis. *See Blouvet v. Colvin,* 2015 WL 751306, at *6 (W.D.N.Y. February 23,

2015 (ALJ's obligation to discuss a claimant's obesity alone or in combination with other

impairments diminishes where evidence indicates that the claimant's treating sources

did not consider obesity as a significant in relation to claimant's ability to perform work activities).  Plaintiff's motion on this issue should be DENIED.

**Congenital clubbing of Plaintiff's hands and feet**

Plaintiff further contends that the ALJ failure to include Plaintiff's congenital clubbing impairment throughout the disability analysis requires remand for further consideration.  Plaintiff's Memorandum at 25. Defendant maintains that the ALJ's error on this issue is harmless, as substantial evidence does not support that Plaintiff's clubbing results in significant work-related limitations of function.  Defendant's Memorandum at 16.  Defendant's contention is without merit.

Unlike Plaintiff's unsuccessful claim on the issue of Plaintiff's obesity, Discussion, *supra*, at 19, the ALJ had, based on Plaintiff's medical records and Plaintiff's appearance at the hearing, sufficient notice that the congenital clubbing of Plaintiff's hands and feet impaired Plaintiff's ability to work.

In particular, during the administrative hearing on June 21, 2012, the Plaintiff testified that he was not able to carry anything (R. 43), work with his hands in front of his body (R. 48-49), was only able to lift five pounds without pain (R. 54), and that Plaintiff's clubbed hands made it impossible for Plaintiff to pick up or maneuver small items.  (R. 58).  Importantly, Plaintiff's counsel requested that the ALJ take judicial notice of the Plaintiff's clubbed hands during the administrative hearing (R. 58), which the ALJ agreed to do ("I'll take notice that it looks like some deformity (of the hands), but we will, we'll rely on, on physicians, medical testimony, the CE, and all the treating providers in the records that are out there").  (R. 58).  Such evidence is enough to alert the ALJ to Plaintiff's impairment of hand and foot clubbing.  *See Celaya v. Halter*, 332 F.3d 1177,

1183 n. 3 (9th Cir. 2003) (ALJ may receive evidence of a claimant's obesity and other conditions by seeing the claimant at the hearing).   Regardless of the ultimate outcome of the case, the ALJ was required to comport with the applicable regulations, and determine whether substantial evidence supports that Plaintiff's congenital clubbing impairment, singly or in combination with Plaintiff's back impairments, was able to meet the criteria for disability.   *See* 20 C.F.R. § 404.1512(a) ("[w]e will consider only impairment(s) you say you have or about which we receive evidence.").

In accordance with the foregoing, upon remand, the ALJ should consider whether Plaintiff's hand and foot clubbing was a severe impairment under step two of the disability analysis, and include the combined effects of Plaintiff's hand and foot clubbing with Plaintiff's other impairments throughout the entirety of the ALJ's disability review analysis.   *See* 20 C.F.R. § 404.1523; 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00Q.

Plaintiff's motion on this issue should therefore be GRANTED, with remand to afford the ALJ the opportunity to consider whether the clubbing of Plaintiff's hands and feet is a severe impairment under step two of the disability analysis, and include the entirety of Plaintiff's impairments in each step of the ALJ's determination.

As the ALJ's review upon remand will necessarily alter the remaining steps of the ALJ's disability review process; the undersigned does not proceed to review Plaintiff's alternative motions.

## CONCLUSION

Based on the foregoing, Defendant's motion (Doc. No. 15) should be DENIED;

Plaintiff's motion (Doc. No. 1) should be DENIED as to judgment on the pleadings, and

GRANTED in part, as to the alternative request for remand, and the matter remanded in

accordance with this Report and Recommendation.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       April 21, 2016
             Buffalo, New York

22

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:        April 21, 2016
             Buffalo, New York